```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| CHERYL HARRIS, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 06-1405 |
| v. | |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **OPINION** |
| Defendant. | |

APPEARANCES:

Robert Anthony Petruzzelli, Esquire
JACOBS, SCHWALBE & PETRUZZELLI, PC
Woodcrest Pavillion
10 Melrose Avenue
Suite 340
Cherry Hill, NJ 08003
    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By:  Vernon Norwood
         Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorney for Defendant

## I. INTRODUCTION

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act ("the Act"), as amended 42 U.S.C. § 405(g), to review the final decision of the Commissioner

of the Social Security Administration, denying the application of the plaintiff Cheryl Harris ("Plaintiff") for Disability Insurance Benefits under Title II of the Social Security Act. See 42 U.S.C. §§ 401-34 (2007). This Court must determine whether substantial evidence supports the Administrative Law Judge's ("ALJ") finding that Plaintiff was not disabled within the meaning of the Act between August 16, 1999 and March 31, 2002.

Plaintiff now brings two challenges. First, she argues that the ALJ was incorrect to identify her past relevant work under the "Cashier I" classification because that classification omits key aspects of her job. Second, she argues the ALJ incorrectly concluded that she was even capable of performing her past relevant work, if that work was correctly described under the Dictionary of Occupational Titles ("DOT") classification "Cashier I." For the reasons stated below, the Court agrees on both counts. Accordingly, the Court shall vacate and remand.

**II. BACKGROUND**

   **A. Procedural History**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on April 8, 2003, stating an inability to work beginning June 1, 1999, a date she later revised to August 16, 1999. Plaintiff met the disability insured status requirements

of the Act only through March 31, 2002 (R. at 30) and so has to show disability prior to that date.  She alleged disability due to numbness and tingling in her arm and fingers, which caused her difficulty in opening and holding objects.  (R. at 66.)  Her application was denied both initially and upon reconsideration. (R. at 30-37, 39-41.)  On March 2, 2004, Plaintiff filed for a hearing before an Administrative Law Judge.  (R. at 42.)  The hearing was held on March 7, 2005 before ALJ Daniel W. Shoemaker. (R. at 246.)  The ALJ found that Plaintiff had a severe impairment during the relevant time: left lateral epicondylitis.[1] (R. at 18.)  But he also found that at that time she had the residual functional capacity to return to her past relevant work and so was not disabled within the meaning of the Act.  (R. at 26.)  The Appeals Council further denied her request for review of the ALJ's decision on February 7, 2006.  (R. at 5.)  Plaintiff then filed the present action with this Court on March 24, 2006.

**B. Plaintiff's Personal and Work History**

Plaintiff was born on August 17, 1944, and currently lives with her husband in Mays Landing, New Jersey.  (R. at 30.)  She has a high school education and past work experience as a cashier in a supermarket, a clothes sorter, and a cashier/hostess in a

---

[1] Left lateral epicondylitis is an inflammation at the left elbow. See Richard Sloane, The Sloane-Dorland Annotated Medical-Legal Dictionary 256 (1987).

3

restaurant.  (R. at 54.)  The parties apparently agree that the only past relevant work experience is Plaintiff's cashier/hostess position.  Plaintiff stopped working that position in October 1998, after injuring her elbow on an iron bar in May 1998 (an injury for which she received a Worker's Compensation settlement).  (R. at 168.)

Plaintiff testified that as a cashier/hostess she was on her feet most of each shift, lifted more than ten pounds at a time, and sometimes operated a cash register, served coffee and cleaned and set tables.  (R. at 256-57.)  In her initial DIB application, Plaintiff stated that in her work at the restaurant, she stood for two and a half hours per shift, knelt for half an hour, crouched for a quarter of an hour, and that she occasionally lifted objects of twenty pounds, but frequently lifted objects of ten pounds.[2]  (R. at 91.)  Plaintiff further indicated that she also greeted and seated customers, carried large menus, and helped move chairs and tables.  (R. at 67, 73.)

Plaintiff testified that after August 16, 1999, she was unable to perform any of her past work due to a problem with her left arm (epicondylitis, non-dominant arm), arthritis in her knees, and a stumbling problem that was later diagnosed as a

---

[2] Social Security Ruling 83-10 defines frequently to mean between 1/3 and 2/3 of the time spent at work and occasionally to mean between 0 and 1/3 of the time spent at work.

4

symptom of Parkinson's Disease.  (R. at 260.)  In her DIB application, Plaintiff listed her ailment as a numbness and tingling of the arm and fingers.  (R. at 66.)  She has not worked since 1999, and instead spends a typical day doing stretching exercises, resting, reading, watching television, taking an hour-long nap, and doing laundry and dishes, but not cooking much and never driving.  (R. at 264.)  Plaintiff has complained of pain in her hands and fingers that she says prevents her from sweeping, lifting heavy items, opening jars for cooking, combing or braiding hair, using a vacuum or iron, participating in active sports, and holding hot items for fear of dropping them.  (R. at 83.)  She also indicated that she cannot walk for long distances or stand for longer than thirty minutes at a time.  (R. at 66.)

**C. Plaintiff's Medical History**

Dr. Andrew Collier, Plaintiff's only treating doctor whose reports are in the record, treated Plaintiff for left elbow pain from March 4, 1999 until March 3, 2000.  Dr. Collier diagnosed her with cubital tunnel syndrome in the left arm, with mild ulnar neuropathy at the left elbow.[3]  He concluded that Plaintiff had around a 90% range of motion.  He also determined that although Plaintiff had no limitations on her ability to stand, walk, or

---

[3] Cubital tunnel syndrome indicates pressure on the ulnar nerve. Ulnar neuropathy denotes general functional disturbances at the ulnar nerve. See Sloane, supra note 1, at 492, 758.

5

sit, she could only work limited duty due to the impairment of her left arm.  Dr. Collier signed off on her return to limited work in July 1999, limiting some uses of her left hand (limited ability to grasp, push, pull, and reach with the left hand) and restricting her to only occasionally lifting ten-pound objects. (R. at 159-69.)

On August 2, 1999, Dr. Steven Mandel performed EMG and nerve conduction studies on Plaintiff in a neurological consultation. The studies showed minimal left ulnar neuropathy at the cubital tunnel without evidence of denervation.  Dr. Mandel did not recommend surgery.  (R. at 128-29.)

Plaintiff saw vascular surgeon Dr. Anthony Comerota on January 5, 2002 and February 28, 2002, for consultations on the cramping in her legs.  Dr. Comerota performed a lower extremity arterial examination and a treadmill examination on Plaintiff. Both tests had normal results, with no evidence of arterial occlusive disease.  (R. at 138.)

Rheumatologist Dr. Carrie Edelman examined Plaintiff on July 30, 2002, a date after the period for which Plaintiff must show disability, for the complaints of pain and numbness in her hands. Dr. Edelman found normal muscle strength in all of Plaintiff's extremities with a slight decrease in her grip and no signs of

synovitis.[4]  Dr. Edelman recommended further tests because she found that Plaintiff's physical exam was not consistent.  (R. at 141-42.)

On March 9, 2003, Dr. Ronald Cowen performed an MRI on Plaintiff to examine her cervical spine with regards to her complaints of neck pain.  Dr. Cowen found no evidence of disc herniation; he found mild spondylotic changes, but no associated significant stenosis.[5]  (R. at 147-53.)

Dr. Devanand Dominique performed a spinal neurological consultation with Plaintiff on April 28, 2003.  Dr. Dominique conducted an MRI on Plaintiff and found her muscle strength to be 5/5 in all isolated muscle groups, except on her left hand.  He also did not recommend surgery.  (R. at 155-56.)

Dr. Norman Schachtel, a State agency medical consultant, reviewed Plaintiff's medical record on October 27, 2003.  Dr. Schachtel concluded that although Plaintiff experienced pain, her impairments to her left arm and hand did not significantly limit her prior to March 2002.  (R. at 190.)  Dr. Schachtel did not examine Plaintiff.

On February 16, 2005, Dr. Anca Popescu examined Plaintiff and diagnosed her with Parkinson's disease.  Although the record

---

[4] Synovitis is inflammation of a synovial membrane (i.e. a layer of connective tissue that lines the cavities of joints). See Sloane, supra note 1, at 699.
[5] Spondylosis refers to degeneration of a vertebra, and stenosis indicates decreased space in the spinal canal. See Sloane, supra note 1, at 644, 668.

does not indicate what Dr. Popescu's examination entailed, she found that Plaintiff could sit or stand for between 15-20 minutes at a time and needed to walk every 15-20 minutes.  Dr. Popescu concluded that Plaintiff was capable of tolerating low-stress jobs, but cautioned that increased stress at work might worsen her Parkinson's symptoms.  (R. at 198-201.)

### D. ALJ's findings

Proceeding through the five-step analysis outlined in C.F.R. § 404.1520, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 18.)  First, he concluded that Plaintiff had not engaged in substantial gainful activity at any time since August 16, 1999.  (Id.)  Second, he held that Plaintiff had one severe impairment during the relevant time: left lateral epicondylitis in her non-dominant arm.  (Id.) He found that although Plaintiff complained of neck pain and osteoarthritis of the knees, the medical evidence did not support a finding that either impairment was severe.  (R. at 19.)

Third, the ALJ determined that epicondylitis was not a "listed impairment" or equivalent to a listed impairment (R. at 19-21) and proceeded to step four to assess her residual functional capacity.  In comparing Plaintiff's statements about her ailments and abilities with the medical record, the ALJ found her to have the "capacity to perform the exertional demands of a

8

limited range of light work." (R. at 22.) He found that because of additional limitations on her abilities – she could lift five pounds frequently and ten pounds occasionally, could stand or sit for six out of eight hours in a workday, and could occasionally grasp and reach overhead with her left arm – Plaintiff could not perform all light work, but could perform at least some light work on a regular and sustained basis. (Id.) He further noted that Plaintiff was not precluded from performing sedentary work. (R. at 24.) He decided that Plaintiff's statements that she had difficulty walking for long distances or standing for more than thirty minutes at a time were lacking in credibility because the medical evidence did not support them. (R. at 19.)

The ALJ then concluded that Plaintiff retained the residual functional capacity to have returned to her past relevant work as a cashier/hostess between August 1999 and March 2002. (R. at 26-27.) He interpreted the duties of this past job, as she described it in her "Work History Report," (R. at 90-94) as most similar to the "Cashier I" classification in the U.S. Department of Labor Dictionary of Occupational Titles and Selected Characteristics ("DOT"). The "Cashier I" job is identified as sedentary work. See DOT 211.362-010. The ALJ noted that a hostess position ordinarily involves more standing and walking than would be characteristic of sedentary work, but considered

9

that the lack of significant lifting made her past relevant work similar to that of the "Cashier I" position.  (R. at 26.)

**III. DISCUSSION**

    **A. Standard of Review**

This Court reviews the ALJ's opinion to determine whether it is based on "substantial evidence" in the record.  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Evidence is not substantial if other evidence overwhelms it or if the ALJ fails to account for conflicts created by countervailing evidence.  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  While the Court must consider the evidentiary record as a whole, the standard is a deferential one.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  Accordingly, the Court cannot substitute its judgment for the ALJ's, even if the Court would have interpreted the factual record differently, as long as the ALJ's opinion is based on substantial evidence.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

**B. Legal Standard for Disability Insurance Benefits**

The Social Security Act defines disability as "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A). 20 C.F.R. § 404.1520 outlines a five-step procedure for determining whether a claimant is disabled within the meaning of the Act.

At the first step, the Commissioner examines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, the claimant is found not disabled. Id. If not, the Commissioner proceeds to the second step in which he examines whether the claimant has any impairment or combination of impairments that are severe. 20 C.F.R. § 404.1520(c). If not, then he or she is not disabled. Id. If the claimant has a severe impairment, the Commissioner proceeds to the third step to check whether it is listed, or similar to one listed, in the appendix to this regulation. 20 C.F.R. § 404.1520(d). If so, then the claimant is found disabled. Id. If not, then the Commissioner proceeds at the fourth step to assess the claimant's residual functional capacity ("RFC," i.e. the most a claimant is able to do, given his or her limitations) and his or her past

relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform past work at the determined capacity, then the claimant is not disabled.  <u>Id.</u>  If the claimant cannot perform past relevant work, then the Commission will proceed to step five and examine the claimant's capacity, age, education, and work experience to determine whether he or she can perform any other work in the national economy.  20 C.F.R. § 404.1520(g).  If the claimant can perform other work in the national economy, then the claimant will be found not disabled.  <u>Id.</u>  The claimant carries the burden of persuasion (by a preponderance of the evidence) at the first four steps, but the burden shifts to the Commissioner at the fifth step.  <u>Wallace v. Sec'y of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).

**C. Analysis of Plaintiff's Arguments**

Plaintiff challenges the ALJ's step four conclusion that between August 1999 and March 2002 she was able to perform her past relevant work.  Plaintiff contends 1) that the ALJ incorrectly identified her past relevant work under the "Cashier I" classification and 2) even if that classification accurately described her past relevant work, the ALJ incorrectly concluded that she was capable of performing a "Cashier I" position given her residual function capacity.  Plaintiff further contends that there is substantial evidence in the record to support a finding

12

that she is disabled within the meaning of the Act, and thus to support summary judgment in her favor.  For the following reasons, the Court agrees that the ALJ erred, but will remand for a determination of whether Plaintiff is disabled.

> 1. <u>The Nature of Plaintiff's Past Relevant Work</u>

Step four of a disability evaluation involves three substeps.  The ALJ must 1) determine the claimant's residual functional capacity, 2) determine the physical and mental requirements of the claimant's past relevant work, and 3) compare the claimant's residual functional capacity to the requirements of that past relevant work.  See <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 120 (3d Cir. 2000); <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996).

Neither party challenges the ALJ's determination of Plaintiff's RFC at "a limited range of light work."  (R. at 22.)  Similarly, this Court finds that substantial evidence in the record supports that determination.  (R. at 162, 165.)

But Plaintiff challenges the ALJ's findings on the physical and mental requirements of her past relevant work.  Past relevant work is 1) substantial gainful activity (i.e. activity of the type usually paid for) 2) done by claimant within the last fifteen years 3) for a time long enough to develop the skills involved.  20 C.F.R. §§ 404.1565, 404.1572.  Social Security

Ruling 82-61 characterizes past relevant work in two ways: 1) the job as claimant performed it or 2) the job as workers generally perform it in the national economy.  The ALJ may use the descriptions in the DOT to determine how workers perform the job in the national economy, however the claimant should be the primary source for information about the functional demands of past relevant work.  SSR 82-61; SSR 82-62 (holding that DOT descriptions utilized should be "supplementary and corroborative" of the record).

The ALJ summarized Plaintiff's past job as a cashier/hostess from the statements she submitted in her "Work History Report." (R. at 26.)  He described Plaintiff's duties as involving use of a register, making change, processing credit cards, seating people, and cleaning tables.  (Id.)  He noted that she would walk for two hours, stand, sit, kneel, and write for half an hour, crouch for a quarter of an hour, and handle, grab or grasp objects for one hour.  (Id.)  But he overlooked key duties Plaintiff identified in the same Work History Report, such as lifting ten pounds frequently and carrying menus, silverware, dishes and chairs.  (R. at 90-94.)  The ALJ also overlooked the additional duties Plaintiff identified while testifying: setting tables, serving coffee, and helping to move tables and chairs. (R. at 256-57.)

14

Thus, in comparing Plaintiff's past work to the DOT "Cashier I" classification, the ALJ omitted key elements of her job. While the "Cashier I" classification includes duties that Plaintiff actually performed, such as using a register, issuing change, and processing credit cards, it does not include other of her key duties such as seating customers, carrying menus, setting and cleaning tables, and moving tables and chairs.  In Burnett, the Third Circuit rejected an ALJ's identification of the plaintiff's past relevant work as a "Deli Cutter Slicer," DOT § 316.684-014, because that classification left out her key duty of unloading cases of cheese from trucks.  Burnett, 220 F.3d at 124. Similarly here, the ALJ's use of the "Cashier I" classification omitted Plaintiff's key duties.  Most notably, the "Cashier I" classification is sedentary work that only occasionally requires lifting ten pounds.  The ALJ noted that Plaintiff's cashier/hostess position involved more walking and potentially more lifting than the "Cashier I" position demands.  But he failed to examine any other DOT classifications, two of which would have been much more "supplementary and corroborative" of the claimant's statements in the record – the "Cashier II" position, and the "Hostess" position.  DOT §§ 211.462-010, 310.137-010.  The "Hostess" position in particular includes key tasks such as seating customers and providing menus and requires

frequently lifting ten pounds.  Further, SSR 82-61 indicates that when a claimant's job does not have a precise counterpart in the DOT, but is a composite of two or more occupations listed in the DOT, the ALJ should evaluate such work according to the description of the past job established in the record.  In this case, the record indicates that the ALJ failed to accurately characterize Plaintiff's past work as established in the record.

### 2. Whether the ALJ addressed Plaintiff's RFC in Determining her Ability to Perform the "Cashier I" Position

Plaintiff's second challenge is that the ALJ improperly concluded that, given her residual functional capacity, she was even capable of taking on a "Cashier I" position.  The Court agrees.  SSR 96-8p requires a careful function-by-function assessment of the claimant's limitations.  As noted earlier, the ALJ performed such an assessment.  But the ALJ failed to address Plaintiff's limitations when he concluded that she was capable of performing past relevant work identified as a "Cashier I" position.  The ALJ had determined that Plaintiff had limited use of her left hand and was only occasionally able to grasp, push, or pull with it.  Yet the "Cashier I" position requires frequent reaching, handling, and fingering.

In Adorno v. Shalala, 40 F.3d 43, 44 (1994), the Third Circuit remanded a case in which the ALJ determined the plaintiff

was unable to tolerate exposure to dust and fumes, but concluded that she was able to return to work that exposed her to dust and fumes.  Similarly here, the ALJ failed to address the problem posed by Plaintiff's limited ability to use her left hand, when the "Cashier I" designation required frequent reaching, handling, and fingering – tasks that likely required frequent use of her left hand.

### 3. Whether this Court Should Award Plaintiff Benefits

Lastly, Plaintiff contends that there is substantial evidence in the record to establish that she is disabled within the meaning of the Act and asks that the Court now grant summary judgment in her favor.  However, the ALJ must fully develop his analysis regarding the character of Plaintiff's past relevant work and whether she can perform that work given her residual functional capacity.  If the ALJ finds on remand that Plaintiff could not perform her past work during the relevant time, he will proceed to the step five analysis of whether Plaintiff was capable of performing any job in the national economy.  The record has not been developed on that issue so this Court cannot make a benefits determination. See Gilliland v. Heckler, 786 F.2d 178, 184-85 (3d Cir. 1986) (holding that district court should only award benefits if administrative record is fully

17

developed).  Because the ALJ has not sufficiently developed the administrative record of Plaintiff's case, the Court now remands.

**IV. CONCLUSION**

For the foregoing reasons, the Court vacates the Commissioner's finding that Plaintiff was not disabled within the meaning of the Act and remands the case for additional proceedings consistent with this Opinion.  On remand, the ALJ shall 1) fully develop his analysis regarding Plaintiff's past relevant work, 2) perform a function-by-function assessment to determine if Plaintiff, given her RFC, is capable of performing that past relevant work and, if necessary, 3) proceed to step five of 20 C.F.R. § 404.1520(g) to determine if Plaintiff was capable of performing any work within the national economy.  An appropriate Order shall be entered.

| | |
|---|---|
| **June 15, 2007** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | U.S. District Court |